**Jaime SAUCEDO–TELLEZ, Petitioner,**

v.

**Brian PERRYMAN, District Director of the Immigration and Naturalization Service, and Janet Reno, Attorney General of the United States, Respondents.**

**No. 99 C 1396.**

United States District Court,
N.D. Illinois,
Eastern Division.

July 2, 1999.

Stanley J. Horn, Attorney at Law, Chicago, IL, for Jaime Saucedo–Tellez, petitioner.

AUSA, United States Attorney's Office, Chicago, IL, for Brian Perryman, District Director of the Immigration and Naturalization Service, Janet Reno, Attorney General of the United States of America, respondents.

## MEMORANDUM OPINION AND ORDER

ZAGEL, District Judge.

Jamie Saucedo–Tellez entered the United States in September 1992. He married a United States citizen and, in May 1996, applied for permanent residency status. In November 1996, Saucedo–Tellez pled guilty to aggravated criminal sexual abuse for which he was sentenced to two years probation. Although it is not completely clear from the record, Saucedo–Tellez appears to have been released from criminal custody about the time of his guilty plea. In May 1997, Saucedo–Tellez became a lawful, permanent resident. Finally, in December 1998, the INS arrested him and began removal proceedings against him based on his conviction pursuant to § 240 of the Immigration and Nationality Act (the "INA"). 8 U.S.C. 1229 (Supp. II 1996).

During these removal proceedings, the immigration judge presiding over them ordered that they be terminated. The judge reasoned that the INS had violated Saucedo–Tellez's right to due process because the INS's actions prevented him from qualifying for a waiver under 8 U.S.C. § 1182(h) (Supp. II 1996). Pursuant to the immigration judge's order, Saucedo–Tellez, who is still in INS custody, attempted to post bond. The INS refused to accept it because the INS filed notice of its intent to appeal Saucedo–Tellez's custody redetermination. In removal actions mandated by § 236(c) of the INA, 8 U.S.C. § 1226(c) (Supp. II 1996) (" § 236(c)")— such as Saucedo–Tellez's—notice of appeal automatically stays execution of the bond. See 8 C.F.R. § 3.19(i)(2) (West 1999).[1]

1.  8 C.F.R. § 3.19(i)(2) provides:
    Automatic stay in certain cases.
    If an alien is subject to section 242(a)(2) of the INA (as in effect prior to April 1, 1997, and as amended by section 440(c) of Pub.L. 104–132), section 303(b)(3)(A) of Div. C of Pub.L. 104–208, or section 236(c)(1) of the INA (as designated on April 1, 1997), and the district director has denied the alien's request for release or has set a bond of $10,000 or more, any order of the immigration judge authorizing release (on bond or otherwise) shall be stayed upon the Service's filing of a Notice of Service Intent to Appeal Custody Redetermination (Form EOIR–43) with the Immigration Court on the day the order is issued, and shall remain in abeyance pending decision of the appeal by the Board of Immigration Appeals. The stay shall lapse upon failure of the Service to file a timely notice of appeal in accordance with § 3.38.

The INS appealed the immigration judge's ruling on January 26, 1999. Saucedo–Tellez has now filed a writ of habeas corpus seeking release from INS custody.

■ The Government argues that I lack subject matter jurisdiction under § 236(e) of the INA, 8 U.S.C. § 1226(e) (" § 236(e)") to review the Attorney General's judgment to apply the mandatory detention rules codified in § 236(c).[23] If the Attorney General has no authority or discretion to apply § 236(c) to Saucedo–Tellez because of statutory or constitutional infirmities, § 236(e) does not bar my review. *See Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir.1999) (noting that "[§ 236(e) ] deals with challenges to operational decisions, rather than to the legislation establishing the framework for those decisions.")[4] Furthermore, § 236(e)'s jurisdiction stripping provision appears to apply only to the Attorney General's discretionary, not mandatory, application of § 236. *See Aguilar v. Lewis*, 50 F.Supp.2d 539, 542–43 (E.D.Va. 1999) (noting that because statutory limitations on jurisdiction assume the most restrictive meaning in light of their plain language and, because § 236 differentiates between optional and mandatory INS action, the stripping provision in § 236(e) applies only

to discretionary INS action.) For these reasons, I have jurisdiction to determine both the scope of the statute and its constitutionality.

Saucedo–Tellez first argues that § 236(c) does not apply to him because the INS took him into custody twenty-five months after being released from criminal custody and after he completed probation. He says that this mandatory custody provision provides that the Attorney General shall take custody "when the alien is released," and that the INS's delay in arresting him places him outside the scope of § 236(c). The INS says that this language merely prevents a criminal alien from claiming that Congress mandates deportation before he completes his sentence and that the timing of its enforcement is a matter of agency discretion.

■ In interpreting § 236(c), if Congress's intent is clear, I must give it effect. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843–44, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694 (1984). If congressional intent is not clear, I must defer to the INS's reasonable interpretation of the provision. *Id.* at 843, 104 S.Ct. at 2781. The INS's interpretation is unreasonable only if it is

**2.** Section 236(c) provides:
> The Attorney General shall take into custody any alien who—
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentenced to a term of imprisonment of at least 1 year, or
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

**3.** Section 236(e) provides:
> The Attorney General's discretionary judgment regarding the application of [§ 236] shall not be subject to review. No court may set aside any action or decision by the Attorney General under [§ 236] regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

**4.** Although *Parra*, 172 F.3d 954, did find § 236(c) constitutional, it did not address its retroactive application to criminal aliens released from custody before October 9, 1998. This was the date when the Transition Period Custody Rules (the "transition rules") of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") expired and § 236 took effect. For a detailed history of the INA's mandatory detention provisions and the transitional rules, see *Velasquez v. Reno*, 37 F.Supp.2d 663, 665–67 (D.N.J.1999).

arbitrary, capricious, or manifestly contrary to law. *Id.*

Courts outside of this Circuit appear to differ on how they construe this provision. *Compare Aguilar,* 50 F.Supp.2d 539, 543 (holding that the plain meaning of § 236(c) applied only to aliens immediately released from incarceration, not those released many years earlier) *and California v. United States,* 104 F.3d 1086 (9th Cir. 1997), cert. denied, — U.S. —, 118 S.Ct. 44, 139 L.Ed.2d 11 (1997) (holding, in a suit by the state of California to force the INS to take criminal aliens into custody, that the INS's decision when to arrest them under 8 U.S.C. § 1252 was within that agency's discretion and therefore unreviewable).

■ I do not read § 236(c)'s plain language as unequivocally clear. It is possible that the phrase "when the alien is released" modifies only "alien" requiring the INS to act at the moment of release. It is also possible, however, that the timing phrase modifies "Attorney General" and the scope of her mandate allowing the INS to arrest the criminal alien any time after he is released from criminal custody.[5]

Unlike the dissent in *In re Noble,* Int. Dec. 3301, 1997 WL 61453 (1997), I do not find the language in § 236(c)(2) dispositive.[6] The dissent reasons that because § 236(c)(2) notes that (c)(1) describes the term "alien," the "when released" language in paragraph (1) describes alien and not attorney general. In my reading, paragraph (2) simply does not resolve the ambiguity of the antecedent of the "when released" language in paragraph (1).

■ Because of this ambiguity, I am obligated to defer to the INS's ruling in *In re Garvin–Noble,* Int. Dec. 3301, 1997 WL 61453 at *8–9 (1997) (holding that similar

language in the transitional rules included aliens released from custody and later detained by the INS). Far from arbitrary, the INS in *Garvin–Noble* devotes five paragraphs to the "anomalous results" that the more limited reading advocated by Saucedo–Tellez would produce. *See Id.* at *9–10.

Saucedo–Tellez next argues that the mandatory detention provisions are not retroactive and do not apply to aliens whose convictions predate the statute because Congress included no retroactive language in § 236. Again, express Congressional intent governs. *See LaGuerre v. Reno,* 164 F.3d 1035, 1040–41 (7th Cir. 1998).

■ Congress has expressly provided that § 236(c) applies prospectively to aliens released after the transitional rules expired. *See* IIRIRA § 303(b)(2) ("after the end of such 1–year or 2 year [delaying] periods [extending the transitional rules], the provisions of [§ 236(c) ] shall apply to individuals released after such periods.")[7] The transitional rules expired on October 9, 1998. Therefore § 236(c) applies only to criminal aliens released after that date and not to Saucedo–Tellez, who was released in November 1996. *See Velasquez,* 37 F.Supp.2d at 670.

Saucedo–Tellez next argues that the automatic stay-pending-appeal provision, 8 C.F.R. § 3.19(i)(2), is unconstitutional. I need not reach this issue because § 236(c) does not apply, and therefore does not invoke the automatic stay provision associated with it. *See Jean v. Nelson,* 472 U.S. 846, 854, 105 S.Ct. 2992, 2997, 86 L.Ed.2d 664 (1985) (noting that the the rule of judicial restraint prohibits reaching constitutional issues when possible).

---

**5.** While this delay admittedly may create an Orwellian result, practical considerations such as limited bed space could necessitate delay between criminal release and INS custody.

**6.** Section 236(c)(2) provides in relevant part:

The Attorney General may release an alien described in paragraph (1) only if the Attorney General....

**7.** This provision is no longer codified but appears in the notes to 8 U.S.C. § 1226 (West 1998).

Because § 236(c) does not apply to Saucedo–Tellez, and because the INS provides no applicable statutory provision allowing the INS to deny the bond set by the immigration judge pending appeal, I grant Saucedo–Tellez's petition for habeas corpus.