# United States Court of Appeals
## For the First Circuit

No. 14-1729

CLAYTON RICHARD GORDON, on behalf of himself and others
similarly situated; NHAN PHUNG VU; GUSTAVO RIBEIRO FERREIRA;
VALBOURN SAHIDD LAWES; CESAR CHAVARRIA RESTREPO,

Petitioners, Appellees,

PRECIOSA ANTUNES,

Petitioner,

v.

LORETTA E. LYNCH, Attorney General; JOHN SANDWEG, Acting
Director; SEAN GALLAGHER, Acting Field Office Director;
CHRISTOPHER J. DONELAN, Sheriff; JEH CHARLES JOHNSON, Secretary
of Homeland Security; MICHAEL G. BELLOTTI, Sheriff; STEVEN W.
TOMPKINS, Sheriff; THOMAS M. HODGSON, Sheriff; JOSEPH D.
MCDONALD, JR., Sheriff,

Respondents, Appellants.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Michael A. Ponsor, U.S. District Judge]

Before

Lynch and Selya, Circuit Judges,
and Burroughs,* District Judge.

* Of the District of Massachusetts, sitting by designation.

Hans H. Chen, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Sarah B. Fabian, Senior Litigation Counsel, District Court Section, Office of Immigration Litigation, Benjamin C. Mizer, Principal Deputy Assistant Attorney General, Civil Division, Leon Fresco, Deputy Assistant Attorney General, Civil Division, and William C. Peachey, Director, District Court Section, Office of Immigration Litigation, were on brief, for appellants.

Adriana Lafaille, with whom Matthew R. Segal, American Civil Liberties Union of Massachusetts, Judy Rabinovitz, Michael Tan, and ACLU Foundation Immigrants' Rights Project were on brief, for appellees.

Matthew E. Price, Emily A. Bruemmer, and Jenner & Block LLP on brief for the American Immigration Lawyers Association, amicus curiae.

George N. Lester, Erin Brummer, Victoria Morte, Stephanie S. Pimentel, Daniel Ruemenapp, and Fragomen, Del Rey, Bernsen & Loewy, LLP on brief for Families for Freedom, Greater Boston Legal Services, Immigrant Defense Project, National Immigrant Justice Center, and University of Maine School of Law Immigrant and Refugee Rights Clinic, amici curiae.

---

November 21, 2016

---

**LYNCH**, **Circuit Judge**.  This court, sitting en banc in Castañeda v. Souza, 810 F.3d 15 (1st Cir. 2015) (en banc), divided evenly over the question of whether the "when . . . released" clause in 8 U.S.C. § 1226(c)(1) limits the scope of § 1226(c)(2). More specifically, the question was whether § 1226(c)(2) categorically "bars the Attorney General from releasing certain aliens on bond once they have been placed in immigration custody" only if she takes those aliens into immigration custody "'when [they are] released' from criminal custody."  Castañeda, 810 F.3d at 18-19 (opinion of Barron, J.) (alteration in original).

The result of the Castañeda deadlock was a non-precedential affirmance of the district court judgments as to two specific petitioners (but not necessarily of the reasoning underlying those judgments).  Those judgments had found unreasonable the government's years-long delay in detaining the specific petitioners at issue (Gordon and Castañeda) and had granted their individual requests for habeas relief, in the form of individualized bond hearings.  See id. at 38; Gordon v. Johnson, 991 F. Supp. 2d 258 (D. Mass. 2013); Castañeda v. Souza, 952 F. Supp. 2d 307 (D. Mass. 2013).

We will recapitulate only briefly the positions of the judges on each side of the Castañeda divide.  To reiterate, the disagreement focused on whether § 1226(c)(2) bars bonded release (1) for any alien who committed a crime described in

- 3 -

§ 1226(c)(1)(A)-(D), regardless of when the alien was taken into immigration custody; or (2) for only those aliens who committed such a crime <u>and</u> were taken into immigration custody within some defined or reasonable period following their release from criminal custody.

Judge Barron, writing for himself and two other members of the en banc court, stated that "Congress's evident intent," <u>Castañeda</u>, 810 F.3d at 36, was for "the cross-reference in § 1226(c)(2) to refer to an alien taken into custody pursuant to the duty imposed by [§ 1226](c)(1) as a whole rather than only to an alien described in subparagraphs (A)-(D)," <u>id.</u> at 30.[1] Judge Barron's opinion further concluded that, "at least absent an

---

[1] Subparagraphs (A)-(D) of § 1226(c)(1) delineate four categories of aliens convicted of crimes and subject to mandatory immigration detention under § 1226(c). These categories, collectively, cover aliens who were convicted of certain crimes of moral turpitude, controlled substance offenses, aggravated felonies, firearm offenses, or acts associated with terrorism. Specifically, § 1226(c) pertains to any alien who:

    (A)  is inadmissible by reason of having committed any offense covered in [8 U.S.C. §] 1182(a)(2) . . . ,

    (B)  is deportable by reason of having committed any offense covered in [8 U.S.C. §] 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) . . . ,

    (C)  is deportable under [8 U.S.C. §] 1227(a)(2)(A)(i) . . . on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

    (D)  is inadmissible under [8 U.S.C. §] 1182(a)(3)(B) . . . or deportable under [§] 1227(a)(4)(B) . . . .

8 U.S.C. § 1226(c)(1)(A)-(D).

authoritative agency construction of § 1226(c)(2), . . . the word 'when' does set forth a time constraint on [§ 1226](c) that expires after a reasonable time." Id. at 43.

Judge Kayatta, writing for himself and two other members of the en banc court, disagreed on several grounds. As a matter of statutory interpretation, his opinion maintained that a "reasonable jurist c[ould] read the phrase 'as described in [§ 1226(c)(1)]' as not incorporating into [§ 1226(c)(2)] the phrase 'when released.'" Id. at 58 (opinion of Kayatta, J.). And even if Judge Barron's opinion was right on that first point, Judge Kayatta's opinion went on, it still "d[id] not follow that the mandate of [§ 1226(c)](2) is also contingent upon prompt compliance with the mandate of [§ 1226(c)](1)." Id. at 59.

While that particular issue concerning the interpretation of § 1226(c) was on appeal -- first to a panel of this court, Castañeda v. Souza, 769 F.3d 32 (1st Cir. 2014) (withdrawn panel opinion), and then to the full en banc court -- the district court issued two orders. The first order, issued on March 27, 2014, certified the following class of present and future detainees who had committed (or would commit) serious crimes:

> all aliens who are or will be detained in Massachusetts under 8 U.S.C. § 1226(c), whom the government alleges to be subject to a ground of removability as described in 8 U.S.C. § 1226(c)(1)(A)-(D), and who were not taken into immigration custody within forty-eight hours (or, if a weekend or holiday intervenes, within no more than

- 5 -

> five days) of release from the relevant predicate
> custody.

Gordon v. Johnson, 300 F.R.D. 28, 30 (D. Mass. 2014) (emphasis added).

In the second order, issued on May 21, 2014, the district court further explained its reasoning on class certification, granted summary judgment to the class, and issued declaratory and injunctive relief. Gordon v. Johnson, 300 F.R.D. 31 (D. Mass. 2014). This second order ("the remedial order") -- which builds on the class-certification order -- is at issue in this appeal.

Consistent with the class-certification order, the remedial order provided relief on a class-wide basis and established a class-wide, bright line rule as to relief, eschewing any attempt to fashion individualized relief or to permit the Board of Immigration Appeals or the Department of Homeland Security ("DHS") to address the appropriate remedy. In pertinent part, the court ordered the following:

- Defendants shall immediately cease and desist subjecting all current and future class members -- that is, aliens not detained within forty-eight hours of release from the relevant prior non-DHS custody (or if a weekend or holiday intervenes, within no more than five days) -- to mandatory detention under 8 U.S.C. § 1226(c).

- Defendants shall immediately determine the custody of every current class member under 8 U.S.C. § 1226(a) and timely provide a bond hearing to every class member that seeks a redetermination of his

or her custody by an Immigration Judge pursuant to 8 C.F.R. § 1003.19 & 1236.1(d).

- Defendants shall determine the custody of every future class member under 8 U.S.C. [§] 1226(a) and provide a bond hearing to every class member that seeks a redetermination of his or her custody by an Immigration Judge pursuant to 8 C.F.R. § 1003.19 & 1236.1(d).

Id. at 43.

We held in abeyance the government's appeal of the remedial order, pending our decision in Castañeda, because of the obvious relevance of each appeal to the other. The district court entered the remedial order on May 21, 2014, long before this court expressed its views in the en banc Castañeda opinions. Therein lies the rub.

The government now argues in this appeal that the remedial order is inconsistent with the opinions in Castañeda, along several lines of reasoning: (1) that neither Judge Barron's opinion nor Judge Kayatta's opinion contemplated class-wide, bright line relief of this sort; (2) that 48 hours, a deadline imposed by the district court, is a plainly unreasonable choice for a bright line rule, given the variety of possible reasons for DHS delay in apprehending a § 1226(c)-eligible alien after the moment of release from criminal custody; and (3) that in any event, it is initially within the authority of DHS, and not a federal district court, to determine what constitutes a reasonable time

between release from criminal custody and DHS detention.[2]  The government has also argued that 8 U.S.C. § 1252(f)(1) and the Castañeda opinions forbade the district court from issuing a class-wide injunction and thereby interfering with DHS's enforcement of the statute.[3]

The primary difficulty with the government's post-Castañeda arguments to us is that those arguments have never been presented to the district court, post-Castañeda, nor has the government asked the district court to modify the remedial injunction in light of that decision and other developments.  We think it best to leave these matters for the district court to address on remand in the first instance.  In reaching this

---

[2]  The American Civil Liberties Union, representing the petitioners, argues that the government's sparse brief has waived all arguments aside from the argument that neither Castañeda opinion contemplated class-wide, bright line relief.  We disagree; these arguments are interrelated.

Regardless, in situations that heavily implicate the public interest and questions of comity between federal institutions, we have the discretion to consider arguments that might ordinarily be deemed waived. Nat'l Ass'n of Soc. Workers v. Harwood, 69 F.3d 622, 627-29 (1st Cir. 1995); see also Chestnut v. City of Lowell, 305 F.3d 18, 21 (1st Cir. 2002) (en banc) (per curiam); United States v. La Guardia, 902 F.2d 1010, 1013 (1st Cir. 1990).

[3]  Under the heading "Limit on injunctive relief," § 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of the provisions of [§§ 1221-1232] . . . other than with respect to the application of such provisions to an individual alien against whom proceedings under such [sections] have been initiated."

conclusion, we wish to be clear that we take seriously the argument that the logic of both principal opinions in <u>Castañeda</u> is inconsistent with the assumptions underlying the district court's remedial order -- both as to deference to agency expertise and as to the need for individualized relief, tailored to the factual circumstances presented.

With respect to agency expertise, the Supreme Court has often reiterated that "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" <u>Bragdon</u> v. <u>Abbott</u>, 524 U.S. 624, 642 (1998) (quoting <u>Skidmore</u> v. <u>Swift & Co.</u>, 323 U.S. 134, 139-40 (1944)); <u>see also</u> <u>INS</u> v. <u>Aguirre-Aguirre</u>, 526 U.S. 415, 424 (1999) ("It is clear that principles of <u>Chevron</u> deference are applicable to this statutory scheme." (citing <u>Chevron U.S.A. Inc.</u> v. <u>Nat. Res. Def. Council, Inc.</u>, 467 U.S. 837, 842 (1984))). Neither of the two principal <u>Castañeda</u> opinions abandoned that principle of deference.

In addition, neither opinion contemplated as an appropriate remedy a bright line rule (e.g., 48 hours), fashioned judicially without any agency input. Judge Kayatta's opinion plainly did not endorse such a rule: by his reading, the government can reasonably interpret § 1226(c)(2)'s bar to bonded release as entirely unrestricted by the "when . . . released" clause of

§ 1226(c)(1), and so "whether the Attorney General complied with [§ 1226(c)(1)'s] mandate right away" is irrelevant to the applicability of § 1226(c)(2). Castañeda, 810 F.3d at 59 (opinion of Kayatta, J.). Moreover, his opinion identified numerous factors that might increase the reasonableness of a delay in taking a criminal alien into DHS custody: an alien might have evaded detention and gone into hiding upon release from criminal custody, or state officials might have failed to provide federal authorities with timely and accurate information about the impending release of a § 1226(c)-eligible alien.[4]  See id. at 51–52.

Nor did Judge Barron's opinion contemplate a bright line test for the reasonableness of a gap in custody.  His opinion interpreted the "when . . . released" clause as imposing a limitation on the applicability of § 1226(c)(2) -- but only "a time constraint . . . that expires after a reasonable time," not a line in the sand.  Id. at 43 (opinion of Barron, J.) (emphasis added); see also id. at 38 ("[W]e need not define the bounds of reasonableness in this case as they were plainly exceeded.").

In light of the affirmance via deadlock in Castañeda, it is open to question whether the district court erred by reading

_____

[4]     At oral argument in this case, the government offered an additional hypothetical: a federal official who is unable to collect a § 1226(c)-eligible alien promptly at the end of the alien's criminal sentence because of adverse weather conditions or other barriers to interstate travel.

the "when . . . released" clause as imposing some sort of reasonable immediacy requirement on the government's ability to invoke § 1226(c)(2)'s bar to bonded release in this circuit. But a class-wide, bright line rule of a mere 48 hours, with no mention of an alien's potential culpability for delay, is inconsistent with the reasoning and logic of both Castañeda opinions.[5]

Accordingly, we vacate the remedial order's grant of summary judgment, declaratory judgment, and injunctive relief.[6] We believe the district court would benefit from requiring the agency to articulate its position on what constitutes a reasonable custody gap under § 1226(c), as well as what practical problems, if any, have resulted from the remedial order since its issuance in May 2014. We also believe the district court should reexamine

---

[5] Moreover, the district court's bright line rule is inconsistent with the approach taken by the Ninth Circuit in Preap v. Johnson, 831 F.3d 1193 (9th Cir. 2016) (motion for extension of time to file petition for rehearing or rehearing en banc granted Nov. 3, 2016). Adopting the position from Judge Barron's Castañeda opinion that "§ 1226(c) applies only to those criminal aliens who are detained promptly after their release from criminal custody," id. at 1206, the Preap court declined to determine "exactly how promptly an alien must be brought into immigration custody after being released from criminal custody for the transition to be immediate enough to satisfy the 'when . . . released' requirement," id. at 1207. Instead, the preliminary injunctive relief in Preap applied "to a class of aliens who were not 'immediately detained' when released from criminal custody." Id. The court did note, however, that "depending on the circumstances of an individual case, an alien may be detained 'when . . . released' even if immigration authorities take a very short period of time to bring the alien into custody." Id.

[6] The May 21, 2014 remedial order is the only judgment before us.

- 11 -

its position on the inapplicability of § 1252(f)(1) -- which expressly provides a "[l]imit on injunctive relief" in the context of this statutory scheme -- particularly in light of our Castañeda opinions. Finally, we direct the district court to consider the parallel due process issues in Reid v. Donelan, 819 F.3d 486 (1st Cir. 2016), and this court's disposition of that case, in conjunction with the Supreme Court's impending consideration of related due process issues. See Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), cert. granted sub nom. Jennings v. Rodriguez, 136 S. Ct. 2489 (2016) (No. 15-1204).

In light of this disposition, our final task is to address the fact that the remedial injunction is currently in effect -- and has been for more than two years. If the government has identified practical problems with that relief, it must say so and not remain silent. We stay our judgment vacating the injunction, for a period of 90 days, to permit the district court to determine how to proceed on remand. If there is delay by the government in responding to orders of the district court, the petitioners may apply to this court for an extension of the stay.[7] No costs are awarded.

So ordered.

---

[7] We gratefully acknowledge the two amicus curiae briefs, filed by American Immigration Lawyers Association and by Families for Freedom et al., respectively.