**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

ILSA SARAVIA, as next friend for
A.H., a minor, and on her own
behalf; LORENZA GOMEZ, as next
friend for A.H., a minor, and on her
own behalf; WILFREDO VELASQUEZ,
as next friend for F.E., a minor, and
on his own behalf,
                *Plaintiffs-Appellees*,

                    v.

JEFFERSON B. SESSIONS III, Attorney
General; JAMES MCHENRY, Acting
Director of the United States
Executive Office for Immigration
Review; THOMAS E. PRICE, Secretary
of the Department of Health and
Human Services of the United
States; STEVEN WAGNER, Acting
Assistant Secretary of the
Administration for Children and
Families; SCOTT LLOYD, Director of
the Office of Refugee Resettlement
of the United States; ELICIA SMITH,
Federal Field Specialist of the Office
of Refugee Resettlement of the
United States; ELAINE C. DUKE,
Acting Secretary of the Department
of Homeland Security of the United

No. 18-15114

D.C. No.
3:17-cv-03615-
VC

OPINION

States; THOMAS HOMAN, Acting
Director of U.S. Immigration and
Customs Enforcement; James
McCament, Acting Director of U.S.
Citizenship and Immigration
Services,
                    *Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of California
Vince Chhabria, District Judge, Presiding

Argued and Submitted July 13, 2018
San Francisco, California

Filed October 1, 2018

Before:  Michael Daly Hawkins, Carlos T. Bea,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

# SUMMARY[*]

## Immigration

In an action arising from Immigration and Customs Enforcement's rearrest and detention of noncitizens who came to this country as unaccompanied minors, the panel affirmed the district court's grant of a preliminary injunction, requiring a prompt hearing before a neutral decisionmaker at which the minors could contest the basis for their rearrest.

The plaintiffs are noncitizen minors who entered the United States unaccompanied by a parent or guardian and were placed in the custody of the United States Office of Refugee Resettlement ("ORR"). ORR subsequently released the minors to a parent or sponsor after concluding that each minor was not dangerous to himself or the community nor a flight risk. However, in 2017, Immigration and Customs Enforcement arrested plaintiffs because of alleged gang membership and transferred them to secure juvenile detention facilities.

After plaintiff A.H. filed this putative class action, the district court provisionally certified a class of certain noncitizen minors and granted a preliminary injunction, requiring a prompt hearing before a neutral decisionmaker at which the minors could contest the gang allegations.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not abuse its discretion in granting the preliminary injunction, rejecting the government's contention that the relief ordered conflicts with the William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA"). The panel concluded that the preliminary injunction is entirely consistent with the TVPRA's mandate that ORR place unaccompanied children in the least restrictive setting that is in the best interest of the child, explaining that: (1) the preliminary injunction calls for minors to be released back to their *previous* sponsors, whom the government has already determined to be suitable; and (2) nothing in the order prohibits the government from transferring minors to ORR custody within 72 hours, as required by the TVPRA.

The panel also rejected the government's contention the district court failed to consider existing procedural protections allegedly available to the minors: (1) an internal review process mandated by the TVPRA and (2) the bond hearings required by the 1997 settlement in *Flores v. Sessions*. The panel explained that the district court expressly considered current ORR procedures, including *Flores* bond hearings and regular review by ORR. However, the district court concluded that, on the current record, these procedures appeared inadequate to protect against the risk of minors being erroneously taken away from their sponsors. The panel concluded that the district court did not abuse its discretion in this regard, explaining that the ORR review process is entirely unilateral such that the juvenile is not provided with notice of the reason for incarceration or an opportunity to answer any charges.

The panel also concluded that the district court did not abuse its discretion in concluding that *Flores* hearings were not sufficient to protect the TVPRA rights of the members

of the plaintiff class, each of whom had initially been found to qualify for placement with a parent or sponsor previously approved by ORR. The panel explained that *Flores* hearings were designed to consider ORR's *initial* determination that a minor should be detained and, thus, a favorable finding in a *Flores* hearing does not entitle minors to release. The government must still identify a safe and secure placement into which the child can be released – a process that can take months. Noting that the government conceded that the record is unclear as to how promptly minors receive *Flores* hearings, the panel also concluded that the district court reasonably found that the evidence suggests class members will remain in ORR custody indefinitely in the absence of a preliminary injunction.

## COUNSEL

Scott G. Stewart (argued), Attorney; Sarah B. Fabian and Nicole N. Murley, Senior Litigation Counsel; William C. Silvis, Assistant Director; William C. Peachey, Director, District Court Section; Chad A. Readler, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendants-Appellants.

Julia Harumi Mass (argued) and William S. Freeman, ACLU Foundation of Northern California, San Francisco, California; Martin S. Schenker, Nathaniel R. Cooper, Kathlyn A. Querubin, and Trevor M. Kempner, Cooley LLP, San Francisco, California; Judy Rabinovitz, ACLU Foundation Immigrants' Rights Project, New York, New York; Holly S. Cooper, Law Offices of Holly S. Cooper, Davis, California; Stephen B. Kang, ACLU Foundation

Immigrants' Rights Project, San Francisco, California; for
Plaintiffs-Appellees.

**OPINION**

HURWITZ, Circuit Judge:

This case involves noncitizen minors who entered the
United States unaccompanied by a parent or guardian and
were then placed in the custody of the United States Office
of Refugee Resettlement ("ORR").  ORR subsequently
released the plaintiffs to a parent or sponsor after concluding
that each minor was not dangerous to himself or the
community nor a flight risk.

In 2017, the government arrested plaintiffs because of
alleged gang membership and transferred them to secure
juvenile detention facilities.  The district court granted a
preliminary injunction, requiring a prompt hearing before a
neutral decisionmaker at which the minors could contest the
gang allegations.  We find no abuse of discretion and affirm.

## I.  Background

### a.  The Legal Framework

The William Wilberforce Trafficking Victims Protection
Reauthorization Act of 2008 ("TVPRA"), Pub. L. No. 110-
457, 122 Stat. 5044 (2008), requires the Department of
Homeland Security ("DHS") to transfer an unaccompanied
noncitizen minor to the custody of the Secretary of Health
and Human Services ("HHS") within 72 hours of
determining that the minor is unaccompanied, absent
"exceptional circumstances."  8 U.S.C. § 1232(b)(3).  ORR
then must ensure that the minor is "promptly placed in the

least restrictive setting that is in the best interest of the child." *Id.* § 1232(c)(2)(A). "In making such placements, [ORR] may consider danger to self, danger to the community, and risk of flight." *Id.* The TVPRA requires that minors be placed either with a "suitable family member" or in an ORR facility.[1] *Id.* "A child shall not be placed in a secure facility absent a determination that the child poses a danger to self or others or has been charged with having committed a criminal offense." *Id.*

In 1997, the United States entered into a settlement agreement with a plaintiff class in *Flores v. Sessions*, providing a minor in an ORR facility the right to a bond hearing before an immigration judge to challenge the agency's initial determination that the minor is a danger to the community. *See Flores v. Sessions*, 862 F.3d 863, 879 (9th Cir. 2017); *see also* ORR Guide § 2.9; *Flores* Settlement ¶ 24A.

### b. Factual Background

In 2017, Immigration and Customs Enforcement ("ICE") agents and New York law enforcement officials executed "Operation Matador." The operation targeted undocumented immigrants with alleged connections to criminal gangs. After receiving allegations of gang

---

[1] "ORR may place a child in a shelter facility, foster care or group home (which may be therapeutic), staff-secure or secure care facility, residential treatment center, or other special needs care facility." U.S. Dep't of Health & Human Servs., *Children Entering the United States Unaccompanied* § 1.1 ("ORR Guide"), https://www.acf.hhs.gov/orr/res ource/children-entering-the-united-states-unaccompanied (last updated Sept. 5, 2018). Secure facilities "have a secure perimeter, major restraining construction inside the facility, and procedures typically associated with correctional facilities." *Id.* § 1.2.4.

affiliation from local law enforcement, ICE agents arrested the alleged gang members, relying on the agency's general authority to arrest noncitizens subject to removal.

Among the minors arrested was A.H., who was born in Honduras in 2000 and entered the United States without inspection in April 2015. After requesting the assistance of immigration officials at the border, A.H. was initially detained in an ORR facility. After determining that A.H. was not a flight risk and posed no danger to himself or the community, ORR released him to live with his mother in New York.

In 2016, A.H. was charged in state juvenile court with menacing and possession of a weapon. The action was adjourned in contemplation of dismissal after A.H. completed a community service program. In March 2017, A.H. was charged in state court with possession of marijuana; this action was also adjourned in contemplation of dismissal.[2]

In June 2017, ICE officers arrested A.H. pursuant to a warrant that alleged removability. A.H. was flown to California and detained at the Yolo County Juvenile Detention Facility.[3]

---

[2] A.H. was arrested on the marijuana charge together with a friend who admitted to a previous gang affiliation. A.H., however, denied any gang involvement.

[3] After filing this lawsuit, A.H. was transferred to a lower-security ORR facility in New York.

### c.  Procedural Background

A.H. filed this action in the United States District Court for the Northern District of California in June 2017, seeking a writ of habeas corpus, a declaratory judgment, and injunctive relief.**[4]**  In August 2017, A.H. filed an amended habeas corpus petition and a putative class action complaint.**[5]**  Relevant to this appeal, the complaint alleged violation of the Fifth Amendment procedural due process rights of the putative class.  A.H. then moved for a preliminary injunction and provisional class certification.

For purposes of ruling on the preliminary injunction motion, the district court provisionally certified

> a class of noncitizen minors meeting the following criteria: (1) the noncitizen came to the country as an unaccompanied minor; (2) the noncitizen was previously detained in ORR custody and then released by ORR to a sponsor; (3) the noncitizen has been or will be rearrested by DHS on the basis of a

---

**[4]** A.H.'s mother, Ilsa Saravia, filed this suit on his behalf.  For ease of reference, we refer to A.H. as the plaintiff.

**[5]** The amended complaint added two plaintiffs, F.E. and J.G.  Like A.H., the two new plaintiffs had originally been released by ORR to the custody of their mothers in New York.  Federal immigration authorities later detained F.E. and J.G. in secure juvenile detention, alleging gang affiliation.  The district court dismissed F.E. and J.G.'s claims without prejudice for improper venue, but noted that "as members of the proposed class, they could still benefit from relief granted on a class-wide basis." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1191 n.11 (N.D. Cal. 2017).  F.E. and J.G. do not challenge the venue ruling in this appeal.

> removability warrant on or after April 1,
> 2017 on allegations of gang affiliation.**[6]**

*Saravia*, 280 F. Supp. 3d at 1202.  The court also granted a preliminary injunction, ordering a "prompt hearing" before a neutral decisionmaker, "in which the government must show that . . . changed circumstances" justified the minors' detention.  *Id.* at 1197, 1205–06.  The injunction provided that the minor and sponsor "must receive notice of the basis for the rearrest," and the hearing must occur "within seven days of arrest, absent extraordinary circumstances," "in the jurisdiction where the minor has been arrested or where the minor lives."  *Id.*  The government timely appealed.**[7]**

## II.  Jurisdiction and Standard of Review

We have jurisdiction of this appeal from the grant of a preliminary injunction under 28 U.S.C. § 1292(a)(1).  *See Thalheimer v. City of San Diego*, 645 F.3d 1109, 1115 (9th Cir. 2011).  "We review a district court's decision to grant or deny a preliminary injunction for abuse of discretion."  *Id*.  "Abuse-of-discretion review is highly deferential to the district court."  *Microsoft Corp. v. Motorola, Inc.*, 696 F.3d 872, 881 (9th Cir. 2012).  We do not "determine the ultimate merits," but rather "determine only whether the district court correctly distilled the applicable rules of law and exercised permissible discretion in applying those rules to the facts at

---

**[6]** The government does not challenge the provisional class certification on appeal.

**[7]** Plaintiffs have moved to supplement the record on appeal with records of hearings subsequently held for conditional class members, which show that the great majority of hearings resulted in release from detention.  Because these records are unnecessary for the disposition of this appeal, we **DENY** the motion.

hand." *Fyock v. Sunnyvale*, 779 F.3d 991, 995 (9th Cir. 2015).

## III.    Discussion

The familiar *Winter* standard provides that "[a] plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In this case, however, we need consider only the plaintiffs' likelihood of success on their Fifth Amendment claims; the government does not quarrel with the district court's application of the other *Winter* factors.

Applying *Mathews v. Eldridge*, 424 U.S. 319 (1976), the district court found the minors could likely show they were entitled to a hearing to challenge the allegations of gang involvement. *Saravia*, 280 F. Supp. 3d at 1194–1201. The government has correctly conceded that *Mathews* supplies the governing legal standard, and that plaintiffs are entitled a hearing in which they can contest the allegations that led to their arrests, *see* Oral Argument at 1:55–2:09, 13:07–:30, *Saravia v. Sessions* (No. 18-15114), https://youtu.be/7wuO aflXrLk; *see generally Hernandez v. Sessions*, 872 F.3d 976, 981 (9th Cir. 2017) ("[T]he government's discretion to incarcerate non-citizens is always constrained by the requirements of due process.").[8] ORR has previously

---

[8] Whether existing procedures gave Plaintiffs sufficient opportunity to contest allegations of gang affiliation matters only if the legality of their rearrests and detention stand or fall on those allegations. DHS's enforcement authority under the INA includes the authority to arrest and

determined that each of the class members was neither dangerous nor posed a flight risk, and that the TVPRA therefore mandated placement with a suitable sponsor. *See* 8 U.S.C. § 1232(c)(2)(A). Thus, we focus not on the minors' arrests, but the revocation of their previous placements under the TVPRA. *See Goldberg v. Kelly*, 397 U.S. 254, 261–62 (1970) (recognizing that the denial or removal of statutory benefits is constrained by procedural due process); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–31 (1982) (collecting cases); *Vitek v. Jones*, 445 U.S. 480, 488 (1980) (similar).

The issues before us are therefore narrow. While agreeing that the minors are entitled to a hearing to contest the gang allegations, the government contends that the district court abused its discretion in entering the preliminary injunction because (1) the relief ordered conflicts with the TVPRA and the *Flores* settlement and (2) existing procedures provide the minors an adequate opportunity to challenge the revocation of their placements. We address these arguments in turn.

---

detain *any* alien on a warrant "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Preap v. Johnson*, 831 F.3d 1193, 1198 (9th Cir. 2016) ("8 U.S.C. § 1226(a) grants the AG discretion to arrest and detain *any alien* upon the initiation of removal proceedings.") (emphasis added). But the Government conceded at oral argument that Plaintiffs were entitled to a hearing to contest the finding of dangerousness that led to their rearrest. We therefore assume only for purposes of this appeal that the Government's plenary power to enforce immigration laws is an insufficient basis to justify Plaintiffs' rearrests, and that Plaintiffs have a due process right to contest the allegations of gang affiliation that led to their rearrests and detention at a higher level of custody.

### a.  The TVPRA and *Flores* Settlement

The TVPRA mandates that ORR place unaccompanied children in the "least restrictive setting that is in the best interest of the child."   8 U.S.C. § 1232(c)(2)(A).   The preliminary injunction is entirely consistent with that statutory mandate.  For each member of the plaintiff class, ORR has already determined that the "least restrictive setting that is in the best interest of the child" is placement with a sponsor.  As the district court recognized, "[i]f DHS could, the day after a minor was released to a parent or other sponsor, arrest the minor . . . and restart the process, the TVPRA's instruction to place the minor in the least restrictive appropriate setting would mean little." *Saravia*, 280 F. Supp. 3d at 1196.

The preliminary injunction therefore orders the minor's release to the previous custodian if a neutral adjudicator determines, after a hearing, that the minor poses no danger to the community or himself and is not a flight risk.  *Id.* at 1176–77, 1197.   The government first complains the injunction somehow conflicts with the TVPRA provision prohibiting the government from placing a minor "with a person or entity unless [ORR] makes a determination that the proposed custodian is capable of providing for the child's physical and mental well-being."  8 U.S.C. § 1232(c)(3)(A). But, the preliminary injunction calls for the minors to be released back to their *previous* sponsors; the government has already determined each of these sponsors is suitable. Nothing in the TVPRA requires the government to conduct this review a second time.[9]

---

[9] The district court recognized that if "ORR has legitimate concerns about the sponsor's suitability, its existing procedures, including

Although the preliminary injunction requires a hearing within seven days of a minor's arrest, it provides the government significant flexibility in deciding whether and where to detain the minor in the interim.  Contrary to the government's assertions on appeal, nothing in the order prohibits the government from transferring the minors to ORR custody within 72 hours, as required by the TVPRA. *See id.* § 1232(b)(3).  Moreover, the government concedes that it can avoid the 72 hour rule when appropriate "under the 'exceptional circumstances' exception to the TVPRA." *See id.*

The government argues in passing that the preliminary injunction's requirement to hold the hearing "in the jurisdiction where the minor has been arrested or where the minor lives," *Saravia*, 280 F. Supp. 3d at 1197, is burdensome, because the government only maintains juvenile immigration detention facilities in limited locations. But, at the preliminary injunction stage, the district court was well within its discretion to conclude that the cost of transporting minors to the hearing location was not likely to outweigh the benefits provided by its order, given that witnesses and evidence concerning the gang allegations that led to the minor's current predicament are most likely to be found where they lived.  *See Hernandez*, 872 F.3d at 993 (noting "minimal costs to the government . . . are greatly outweighed by the likely reduction it will effect in unnecessary deprivations of individuals' physical liberty"); *see also Vasquez v. Rackauckas*, 734 F.3d 1025, 1046 (9th Cir. 2013) ("Determining whether an individual is an active

coordination with state welfare agencies, would presumably be sufficient to address those concerns." *Saravia*, 280 F. Supp. 3d at 1198 n.15.  At the preliminary injunction hearing, a government witness testified that ORR typically refers such cases to Child Protective Services.

gang member presents a considerable risk of error. The informal structure of gangs, the often fleeting nature of gang membership, and the lack of objective criteria in making the assessment all heighten the need for careful factfinding.").

### b. Adequacy of Existing Procedures

The government next contends that the district court failed to consider two existing procedural protections allegedly available to the minors: (1) an internal review process mandated by the TVPRA and (2) the bond hearings required by the *Flores* settlement. To the contrary, the district court expressly considered "current ORR procedures," including "the right to challenge a finding of dangerousness in a *Flores* bond hearing . . . and regular review by ORR to determine the appropriate security level" and concluded that "on the current record" these procedures "appear inadequate to protect against the risk of minors being erroneously taken away from their sponsors." *Saravia*, 280 F. Supp. 3d at 1198–99.

The district court did not abuse its discretion in so concluding. The TVPRA requires ORR to review a minor's placement in a secure facility on a monthly basis. 8 U.S.C. § 1232(c)(2)(A). But, the process is entirely unilateral; the juvenile is not provided with notice of the reason for incarceration or an opportunity to answer any charges. *See id.*; ORR Guide § 1.4.2. "Due process always requires, at a minimum, notice and an opportunity to respond." *United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014); *see also Zimmerman Brush Co.*, 455 U.S. at 434 (reciting rule). "The mere availability and utilization of some procedures does not mean they were constitutionally sufficient." *D.B. v. Cardall*, 826 F.3d 721, 743 (4th Cir. 2016); *see Vitek*, 445 U.S. at 491.

*Flores* hearings provide minors in ORR custody the right to a bond hearing before an immigration judge to challenge the agency's determination that the minor is a danger to himself or the community. *See Flores*, 862 F.3d at 879; *see also* ORR Guide § 2.9; *Flores* Settlement ¶ 24A. But, these hearings were designed to consider ORR's *initial* determination under the TVPRA that a minor should be detained in a secure facility. Thus, "a favorable finding in a [*Flores* hearing] does not entitle minors to release" because "the government must still identify a safe and secure placement into which the child can be released." *Flores*, 862 F.3d at 867; ORR Guide § 2.9. This requires a "verification of the custodian's identity and relationship to the child, if any, as well as an independent finding that the individual has not engaged in any activity that would indicate a potential risk to the child." *See* 8 U.S.C. § 1232(c)(3)(A). That process can take months. *See, e.g.*, *Santos v. Smith*, 260 F. Supp. 3d 598, 613–14 (W.D. Va. 2017); *Beltran v. Cardall*, 222 F. Supp. 3d 476, 483–84 (E.D. Va. 2016). The district court did not abuse its discretion in concluding that *Flores* hearings were not sufficient to protect the TVPRA rights of the members of the plaintiff class, each of whom had initially been found to qualify for placement with a parent or sponsor previously approved by ORR.

Moreover, due process requires "the opportunity to be heard 'at a meaningful time.'" *Mathews*, 424 U.S. at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). But, as the government candidly conceded at oral argument, *see* Oral Argument at 1:01–:09, 4:19–6:47, 8:33–:42, the record is unclear as to how promptly minors receive *Flores* hearings. One class member, for example, was arrested on June 16, 2017, and requested a *Flores* hearing on August 22, 2017. As of September 22, 2017, no such hearing had been

scheduled.  *See Flores* Settlement ¶ 12.A (providing only that the government "shall expeditiously process the minor and shall provide the minor with a notice of . . . the right to a bond redetermination hearing"); ORR Guide § 2.9.  In the district court, the government did not provide a clear timeline for hearings for members of the conditional class under the *Flores* settlement, instead describing the hearings as a "new requirement" and "a work in progress."  Thus, the district court reasonably found "the evidence suggests [class members] will remain in ORR custody . . . indefinitely in the absence of a preliminary injunction."  *Saravia*, 280 F. Supp. 3d at 1200.  It was plainly not an abuse of discretion for the court to conclude "on the current record" that current procedures "appear inadequate." [10]  *Id.* at 1198.

## IV.    Conclusion

We affirm.  We, of course, express no view whether a permanent injunction should issue or, if so, what it should provide.  Nor do we suggest that the government cannot seek

---

[10] The government also argues the district court abused its discretion by modeling its preliminary injunction order on the procedures applicable to adults re-arrested by ICE after having been released on bond pursuant to 8 U.S.C. § 1226(b).  In *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981), the BIA recognized that "where a previous bond determination has been made by an immigration judge, no change should be made . . . absent a change of circumstance."  At the preliminary injunction hearing, the government explained that DHS complies with *Sugay* by conducting a "changed circumstances" bond hearing before an immigration judge within seven to fourteen days of an arrest.  Contrary to the government's characterization on appeal, the district court never held that *Sugay* requires these hearings; the court simply noted that "[a]ccording to government counsel, DHS has incorporated this holding into its practice" by holding such hearings.  *Saravia*, 280 F. Supp. 3d at 1197.  The district court then reasonably looked to these procedures for guidance in structuring preliminary relief.

modification of the preliminary injunction based on new arguments or evidence. We hold only that, on this record, the district court did not abuse its discretion in concluding that the minors were entitled to some sort of due process hearing and ordering the government, pendente lite, to provide members of the minor class with the procedural protections set forth in its order.

**AFFIRMED.**